UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JO ANN WILKERSON,<br>    118 Cross Timbers Trail<br>    Coppell, Texas 75019,<br><br>        Plaintiff,<br><br>v.<br><br>MARTIN J. GRUENBERG, Chairman,<br>    Federal Deposit Insurance Corp.<br>    550 17th Street, N.W.<br>    Washington, DC 20429,<br><br>        Defendant. | Civil Action No. _____ |

## COMPLAINT
(Employment Discrimination)

### Introduction

1. Plaintiff Jo Ann Wilkerson brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e)-2 *et seq.*, and 42 U.S.C. § 1981a, and the Age Discrimination in Employment Act, 29 U.S.C. § 633a, to redress unlawful race, sex and/or age discrimination and retaliation for her prior and ongoing protected EEO activity (*i.e.*, complaining about such race, sex and age discrimination and prosecuting such claims), perpetrated against her by management at the Federal Deposit Insurance Corporation ("FDIC"). Specifically, plaintiff contends that her FDIC superiors discriminated against her based on race, sex and/or age discrimination with regard to (a) the Performance Management Recognition ("PMR") evaluation which she received as a CG-15 Senior Community Affairs Specialist term employee in the Community Affairs Branch, Outreach and Program Development Section, of the FDIC's Division

of Depositor and Consumer Protection, and (b) the disparate treatment she received from them as compared to the treatment accorded her younger white male colleague who was also serving on a term appointment as a GC-15 Senior Community Affairs Specialist in the Outreach and Program Development Section. In addition, plaintiff also alleges retaliation for having complained about that discrimination and prosecuted such claims when she was later passed over for selection – despite excellent qualification – for two vacant positions as a Community Affairs Specialist, CG-13, in Lexington, Kentucky, and in Raleigh, North Carolina, for which she applied, the decision having been made in the FDIC's offices in Washington, D.C., by the Associate Director of the Community Affairs Branch, the person who had been her second-line supervisor when she worked as a Senior Community Affairs Specialist at the CG-15 level..

## Jurisdiction

2.      This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16(c) and by the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 633a, through the Fair Labor Standard Act, as amended, 29 U.S.C. § 216(b). Subject matter jurisdiction is also founded on 28 U.S.C. § 1331, as this action arises under the laws of the United States, thereby presenting a federal question.

## Venue

3.      Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(b) as the events giving rise to plaintiff's claims occurred in this judicial district, and the defendant is located, has offices, and conducts business in this judicial district.

### Exhaustion of Administrative Remedies

4. All of the necessary administrative prerequisites for filing the above-referenced claims have been met as plaintiff having (a) timely filed a formal administrative complaint of employment discrimination based race, sex and/or age on February 20, 2015 (Agency Docket No. FDICEO-15-015) and (b) timely filed a second formal administrative EEO complaint, this time alleging retaliation for having made and pursued the earlier claims of race, sex and/or age discrimination on July 29, 2015 (Agency Docket No. FDICEO-15-038); and as the FDIC having issued a Final Agency Decision (FAD) with regard to all plaintiff's formal EEO claims of discrimination and retaliation on February 16, 2016 – that is, within 90 days of the filing of the instant complaint with this Court.

### Parties

5. Plaintiff Jo Ann Wilkerson (referred to as either "Ms. Wilkerson" or "plaintiff" herein) is a 58 year old female African American who is a citizen of the United States and a resident of the State of Texas. Until her term appointment came to an end on February 26, 2015, Ms. Wilkerson was employed in Washington, D.C., by the Federal Deposit Insurance Corporation ('FDIC") as a Senior Community Affairs Specialist, CG-15, in the Outreach and Program Development Section of the Community Affairs Branch of FDIC's Division of Depositor and Consumer Protection ("DCP") in Washington, D.C. Upon the ending of her term appointment with FDIC, Ms. Wilkerson left her residence in the Washington metropolitan area and returned to her home in Coppell, Texas.

6. Defendant Martin J. Gruenberg (referred to as "defendant" herein) is currently the Chairman of the Federal Deposit Insurance Corporation ("FDIC"), an independent government corporation within the Executive Branch of the government of the United States, which has had more than 600 employees in each of the last 20 months. Defendant Gruenberg is here sued in his official capacity as head of the FDIC only.

**Statement of Facts**

7. Prior to become employed at the FDIC as a Senior Community Affairs Specialist at the CG-15 level, Jo Ann Wilkerson had earned a Master in Business Administration degree (MBA), with a concentration in finance and banking, a Master in City and Regional Planning degree, and a Bachelor of Arts degree in Education and History. After working as a high school teacher, she served as the liaison between a foundation and a community-based organization to manage the development of an economic development plan for an extremely distressed area in Dallas, Texas. To facilitate the planning process, she provided technical assistance regarding economic development strategies and outreach to the community-based organization leaders, working to encourage partnerships between the community leaders, business leaders, real estate developers, and senior officials from regional and local government entities. Her pre-FDIC experience included the management of comprehensive land use plans and a series of economic analyses for a large-scale public works project involving the construction of regional transportation, flood control, and recreational infrastructure in Dallas, during which she developed the scope of work, managed a consultant team, and developed and managed the public education and outreach process for the studies. She also facilitated a partnership with the University of Texas-Arlington and the city of Dallas in order to facilitate the economic development planning process for three low-income neighborhoods. Her pre-FDIC experience also included the management of the economic development and planning functions for a small city, including land use planning and the provision of economic development programs and services to support small businesses and community-based organizations. Thus, by the time she came to the FDIC as Senior Community Affairs Specialist, Ms. Wilkerson had amassed considerable experience in economic and community development for both urban and rural areas.

8.  In a nutshell, during her service at FDIC's headquarters as a Senior Community Affairs Specialist, CG-15 – which began in February 2011 and ended four years later in February 2015 – Ms. Wilkerson's duties and responsibilities were to conduct research on community development issues of concern to financial institutions, and to develop educational / outreach material to help facilitate bank investment in economic and community development projects. During her time at FDIC, Ms. Wilkerson was under the immediate supervision of Luke Reynolds, a white male in his late 30s, who was the Chief of the Outreach and Program Development Section of the Community Affairs Branch, Division of Depositor and Consumer Protection.

9.  Throughout her term appointment at FDIC, Ms. Wilkerson was treated less favorably by Mr. Reynolds than the treatment he accorded to her younger white male colleague, James Yagley, who was also serving on a term appointment as a GC-15 Senior Community Affairs Specialist in the Outreach and Program Development Section under Mr. Reynolds's supervision. In this regard, Ms. Wilkerson was made to suffer many acts of disparate treatment, most critically, on November 20, 2014, Ms. Wilkerson received her 2014 performance evaluation under FDIC's PMR system from management with an overall rating of "III – Accomplished Practitioner," which rating caused her to receive a lower pay increase than she would have had with the higher rating she deserved, and it made her less competitive for a permanent position with the FDIC and with outside organizations. Leading up to that unfair PMR performance evaluation for 2014, Ms. Wilkerson was made to suffer disparate treatment on account of her race, sex and/or age through numerous acts and omissions, including:

   a.  from February 2011 until June 2012 she was told that, as a term employee, she would not be permitted to travel to meetings and conferences, but her colleague, the young, white James Yagley was provided a travel card and began using it to travel

to meetings and conferences soon after he was hired – although he also was a term employee and at the same grade level as Ms. Wilkerson;

b. from February 2011 to August 15, 1013, she was denied access to the shared computer drive and Community Affairs folder that permitted staff to share resources to which James Yagley enjoyed access from the beginning of his term appointment;

c. from February 2011 until January 22, 2014, she was not given an opportunity to present the outreach plan she had developed for a publication she had authored to the Regional Community Affairs Officers at any of their quarterly meetings in Washington, D.C., while the young, white James Yagley was permitted to participate in all the quarterly meetings;

d. from February 2011 until February 2014, she was denied use of a laptop computer for work on the grounds that she was a term employee, while the young, white Mr. Yagley was provided one from his first day at FDIC, though also was a term employee;

e. from February 2011 until July 2014, she was denied access to CARDS, a Community Affairs website that allowed staff to share resources and information to which James Yagley, Ms. Wilkerson's younger, white male colleague, had access from the beginning of his term appointment;

f. from February 2011 until October 2014, she was denied an opportunity to attend meetings of the FDIC Chairperson's Advisory Committee of Economic Inclusion which were held several time a year, while the young, white Mr. Yagley was not restricted from attending these meetings;

g.  in January 2012, she was denied an opportunity to attend the Community Reinvestment Act training scheduled for March 2012, while the young, white Mr. Yagley enjoyed such training opportunities throughout his tenure;

h.  in November 2013, Ms. Wilkerson received her 2013 performance evaluation of an overall rating of "III – Accomplished Practitioner" under the FDIC's PMR system, which rating was significant lower than the rating she had previously received, and undeservedly so;

i.  in July 2014, Ms. Wilkerson was denied the opportunity to serve as moderator of the national webinar that she had organized to provide an overview of the publication she had authored entitled "Strategies for Community Banks to Develop Partnerships with Community Development Financial Institutions (CB-CDFI)," while the young, white Mr. Yagley had been allowed to moderate numerous webinars;

j.  in October 2014 Ms. Wilkerson was denied the opportunity to participate in the FDIC's Examination School for Non-Examiners scheduled to be held in February 2015; and

k.  Ms. Wilkerson was not recognized with a monetary award in 2014 for the CB-CDFI publication that she authored and launched, while the young, white Mr. Yagley received substantial cash awards for much less important work during his tenure at FDIC.

10. On February 20, 2015, prior to departing from FDIC's employ with the end of her term appointment – which was on February 26, 2015 – Ms. Wilkerson filed a formal complaint of discrimination with the FDIC Office of Minority and Women Inclusion ("OMWI"), having previously lodged an informal complaint with OMWI in January 2015 (after initially meeting with

an OMWI EEO Counselor in December 2014). Without doubt, Ms. Wilkerson's second level supervisor, Janet Gordon, Associate Director of the Community Affairs Branch, Division of Depositor and Consumer Protection, and Luke Reynolds' immediate supervisor, was informed of Ms. Wilkerson's EEO claims concerning the mistreatment (*i.e.*, see Paragraph No. 9 a. - k. above) by her subordinate Luke Reynolds by the time Ms. Wilkerson filed the formal EEO complaint, if not during the informal EEO process in which Mr. Reynolds was interviewed by the OMWI EEO Counselor in January 2015.

11. As noted herein above, Ms. Wilkerson departed FDIC's employment on February 26, 2015, upon the completion of her term appointment as a Senior Community Affairs Specialist, CG-15. However, just prior to the end of her term employment with FDIC, she applied for several posted vacancies at the FDIC and, thereafter, continued to search for an employment position at FDIC in which she could utilize her skills and experience.

12. Specifically, on February 17, 2015, Ms. Wilkerson applied for the two permanent Community Affairs Specialist positions that were advertised at the CG-13 level posted by the FDIC – one in Lexington, Kentucky, and another in Raleigh, North Carolina. She interviewed for these positions on March 13, 2015 and March 24, 2015.

13. On April 8, 2015, Ms. Wilkerson learned that – despite excellent qualification, having been referred for selection, and interviewed twice for each of these CG-13 vacancies – she had not been selected for either of these job openings, the selectees having been two persons who had no prior FDIC experience. Janet Gordon, Ms. Wilkerson's former second-level supervisor, was the selecting official for both these position vacancies. Ms. Gordon's FDIC office at the time she non-selected Ms. Wilkerson for these jobs was located in Washington, D.C., as was Mr. Reynolds's FDIC office and Ms. Wilkerson's FDIC office when plaintiff was given her 2014 rating by Mr. Reynolds.

14. Upon learning that she had not been selected for either of the two permanent CG-13 Community Affairs Specialist positions, and the circumstances surrounding the selections, Ms. Wilkerson timely filed an additional formal EEO administrative complaint claiming unlawful retaliation for her prior (and ongoing) protected civil rights / EEO activity (*i.e.*, her having lodged and prosecuted an EEO administrative complaint with regard to the claims enumerated in Paragraph No. 9 a. - k. above) with regard to her non-selection for these position vacancies.

**Statement of Claims**

**I.     Race Discrimination –**

15. The actions and omissions taken by FDIC management with regard to Ms. Wilkerson as specified in Paragraph No. 9 a. - k. above were taken with an intent to discriminate against her on the basis of her race, and as such constitute violations of the Title VII of the Civil Rights Act, as amended, by defendant.

16. As a consequence of such racial discrimination by defendant, plaintiff has suffered and continues to suffer adverse consequences, including loss of pay and benefits of employment, personal and professional embarrassment and humiliation, emotional pain and suffering, and a loss of the enjoyment of life.

**II.    Sex Discrimination –**

17. The actions and omissions taken by FDIC management with regard to Ms. Wilkerson as specified in Paragraph No. 9 a. - k. above were taken with an intent to discriminate against her on the basis of her sex, and as such constitute violations of the Title VII of the Civil Rights Act, as amended, by defendant.

18. As a consequence of such sex discrimination by defendant, plaintiff has suffered and continues to suffer adverse consequences, including loss of pay and benefits of employment,

personal and professional embarrassment and humiliation, emotional pain and suffering, and a loss of the enjoyment of life.

**III.  Age Discrimination –**

19.   The actions and omissions taken by FDIC management with regard to Ms. Wilkerson as specified in Paragraph No. 9 a. - k. above were taken with an intent to discriminate against her on the basis of her age, and as such constitute violations of the Age Discrimination in Employment Act ("ADEA") by defendant.

20.   Moreover, defendant's violations of the ADEA as noted herein above were intentional and malicious by FDIC management and by defendant, and as a consequence of such intentional and malicious violation of the ADEA by defendant, plaintiff has suffered and continues to suffer adverse consequences, including loss of pay and benefits of employment, personal and professional embarrassment and humiliation, emotional pain and suffering, and a loss of the enjoyment of life.

**IV.  Retaliation for Prior and Continuing Protected Civil Rights / EEO Activity –**

21.   The actions and omissions taken by FDIC management with regard to Ms. Wilkerson as specified in Paragraph Nos. 10 - 14 above were taken with an intent to retaliate against her on account of her prior and continuing EEO / Civil Rights Activities – *i.e.*, filing and prosecuting her claims of discrimination in employment practices on the basis of race, sex and age – and as such constitute violations of the Title VII of the Civil Rights Act, as amended, and/or the ADEA by defendant.

22.   As a consequence of such unlawful retaliatory conduct on defendant's part, plaintiff has suffered and continues to suffer adverse consequences, including loss of pay and benefits of employment with the FDIC, personal and professional embarrassment and humiliation, emotional pain and suffering, and a loss of the enjoyment of life.

## **Prayer for Relief**

WHEREFORE, plaintiff prays that this Court enter judgment in her favor and against defendant on the claims of unlawful race and sex discrimination in employment practices brought herein pursuant to Title VII of the Civil Rights Act of 1964, as amended, and on her claims of unlawful age discrimination pursuant to the ADEA, and on her claims of unlawful retaliation for her prior and continuing civil rights / EEO activity, pursuant to both Title VII of the Civil Rights Act, as amended, and the ADEA, and provide her with the following relief:

(a) award plaintiff compensatory damages against defendant in the amount of $300,000.00, plus interest thereon;

(b) order defendant to provide plaintiff with outstanding performance ratings for 2014, and for every period thereafter, with bonus and pay increases earned thereby to be paid with interest;

(c) order defendant to pay an amount equal to any and all back pay due plaintiff as "liquidated damages" she suffered on account of defendant's willful and intentional violation of the ADEA;

(d) order defendant to credit all annual leave and sick leave that plaintiff would have earned had she been selected for a CG-13 in April of 2015 and served thereafter in said position;

(e) order defendant to promote plaintiff to a CG-14 level, and increase her pay accordingly, effective May 1, 2016 (and pay here all back pay that results from such a pay increase);

(f) enjoin defendant and all FDIC's officers and directors and managers from retaliating against plaintiff further, and from discriminating against her on account of her race, sex or age in the future;

(g) award plaintiff the costs of bringing and maintaining this civil action and the administrative complaints that necessarily preceded it, including reasonable attorneys' fees, pursuant to 42 U.S.C. §2000e-5(k) and 29 U.S.C. § 2016(b); and

(h) award plaintiff such other and further relief as the interests of justice may require.

## Jury Demand

Plaintiff hereby requests a trial by jury on all issues of fact, including the measure of damages.

Respectfully submitted,

David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO, P.C.
1101 15th Street, N.W.
Suite 205
Washington, DC 20005
Tel (202) 842-0300
Fax (202) 842-1418
Email - dhshapiro@swickandshapiro.com

Attorney for Plaintiff